**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>Plaintiff,<br><br>-against-<br><br>HUDSON EXCESS INSURANCE COMPANY and STEADFAST INSURANCE COMPANY,<br><br>Defendants. | Case No. 1:24-cv-01523-DEH-BCM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

USERY & ASSOCIATES
485 Lexington Avenue, 6th Floor
New York, NY 10017
(917) 778-6680

*Attorneys for Plaintiff*
*The Travelers Indemnity Company of Connecticut*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

    A.  The Policies ............................................................................................................ 2

    A.  The Jind Subcontract and Invoice .......................................................................... 5

    B.  The Kiska Subcontract and Payment Application................................................... 8

    C.  The Incident and Underlying Action...................................................................... 10

    D.  Tenders to Defendants........................................................................................... 11

LEGAL STANDARD........................................................................................................ 12

    A.  Summary Judgment............................................................................................... 12

    B.  Duty to Defend ..................................................................................................... 12

ARGUMENT.................................................................................................................... 14

    I.   HUDSON HAS A DUTY TO DEFEND NOTIAS BECAUSE
         THERE IS A REASONABLE POSSIBLITY THAT JIND'S ACTS
         OR OMISSIONS PROXIMATELY CAUSED CLAIMANT'S
         INJURIES........................................................................................................ 14

    II.  STEADFAST HAS A DUTY TO DEFEND NOTIAS BECAUSE
         THERE IS A REASONABLE POSSIBLITY THAT KISKA'S
         ACTS OR OMISSIONS PROXIMATELY CAUSED
         CLAIMANT'S INJURIES ............................................................................... 16

    III. THE COVERAGE PROVIDED BY THE TRAVELERS POLICY
         IS EXCESS TO THE COVERAGES PROVIDED BY THE
         HUDSON POLICY AND THE STEADFAST POLICY ................................. 17

CONCLUSION................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) ................................................................ 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 12

*Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.*,
238 F.Supp.3d 604 (S.D.N.Y. Mar. 3, 2017) ................................................................ 13

*Automobile Ins. Co. of Hartford v. Cook*,
7 N.Y.3d 131, 818 N.Y.S.2d 176 (2006) ................................................................ 12

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
8 N.Y.3d 708, 840 N.Y.S.2d 302 (2007) ................................................................ 12, 14, 16

*Burlington Ins. Co. v. NYC Tr. Auth.*, 29 N.Y.3d 313, 57 N.Y.S.3d 85 (2017) ...................... 14, 16

*Century 21, Inc. v. Diamond State Ins.*, 442 F.3d 79 (2d Cir. 2006) ........................................... 13

*Charles F. Evans Co. v. Zurich Ins. Co.*,
95 N.Y.2d 779, 710 N.Y.S.2d 301 (2000) ................................................................ 13

*Consolidated Edison Co. of N.Y. v. ACE Am. Ins. Co.*,
673 F.Supp.3d 475 (S.D.N.Y. 2023) ................................................................ 14, 16

*Coyle v. U.S.*, 954 F.3d 146 (2d Cir. 2020) ................................................................ 12

*Dalberth v. Xerox Corp.*, 766 F.3d 172 (2d Cir. 2014) ................................................................ 12

*Fitzpatrick v. American Honda Motor*,
78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) ................................................................ 13

*Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*,
91 N.Y.2d 169, 667 N.Y.S.2d 982 (1997) ................................................................ 13

*Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*,
314 F.Supp.3d 534 (S.D.N.Y. Mar. 28, 2018) ................................................................ 13

*IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137 (2d Cir. 2004) ................................................ 13

*Olin Corp. v. Insurance Co. of N. Am.*,
218 F. Supp.3d 212 (S.D.N.Y. Nov. 21, 2016) ................................................................ 13

*Regal Constr. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
15 N.Y.3d 34, 904 N.Y.S.2d 338 (2010) ................................................................ 13

*Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984) ........................... 13

*Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992)............................................ 12

*Servidone Constr. Corp. v. Security Ins. Co. of Hartford*,
　64 N.Y.2d 419, 488 N.Y.S.2d 139 (1985) ............................................................... 14

*Sport Rock Int'l, Inc. v. American Cas. Co. of Reading, PA*,
　65 A.D.3d 12, 878 N.Y.S.2d 339 (1st Dept. 2009)................................................ 17

*Village of Brewster v. Virginia Sur. Co., Inc.*,
　70 A.D.3d 1239, 896 N.Y.S.2d 203 (3d Dept. 2010) ............................................. 19

*Zurich Am. Ins. v. Harleysville Ins. Co.*,
　194 F.Supp.3d 253 (S.D.N.Y. July 7, 2016)......................................................... 12

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 12

Local Civil Rule 56.1 ................................................................................................. 2

# **PRELIMINARY STATEMENT**

This is an insurance coverage dispute wherein Plaintiff, The Travelers Indemnity Company of Connecticut ("Travelers"), seeks, *inter alia*, a declaration that Defendants, Hudson Excess Insurance Company ("Hudson") and Steadfast Insurance Company ("Steadfast"), have a duty to defend Notias Construction, Inc. ("Notias") in connection with an underlying personal injury action, *Anabel Rebollar v. Hope East of Fifth Housing Development Fund Company, et al.*, pending in the Supreme Court of the State of New York, County of New York, Index No. 151176/2021 (the "Underlying Action").

Travelers issued a policy of insurance to Notias. Hudson issued a policy of insurance to Notias's subcontractor, Jind Contractors Inc. ("Jind"), which provides coverage for additional insureds for liability "caused, in whole or in part, by" the acts or omissions of Jind or those acting on Jind's behalf. In the Underlying Action, Anabel Rebollar ("Claimant") alleges she was injured when she was struck by piece of the entry system/lock on a metal gateway outside her apartment. Extrinsic evidence known to Hudson indicates that Jind performed work on the gateway prior to Claimant's accident. Furthermore, the Underlying Action includes claims directly against Jind for negligence.

Steadfast issued a policy of insurance to Kiska Solutions, Inc. ("Kiska"), which provides coverage for additional insureds for liability "caused, in whole or in part, by" the acts or omissions of Kiska. Kiska's application for payment from Notias shows that Kisks installed the key fob entry system at the accident location. Additionally, the Underlying Action also alleges negligence causes of action directly against Kiska.

Since Hudson's duty to defend Notias was triggered by the underlying allegations as well as extrinsic facts known to Hudson, Hudson must defend Notias in connection with the Underlying

1

Action and reimburse Travelers for all post-tender costs and fees already incurred. Additionally, because Steadfast's duty to defend Notias was triggered by the underlying allegations as well as extrinsic facts known to Steadfast, Steadfast must also defend Notias in connection with the Underlying Action. The Court should, therefore, grant summary judgment in favor of Travelers.

<u>**STATEMENT OF FACTS**</u>

The undisputed facts herein are drawn from Travelers' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("L. Civ. R. 56.1 Statement"), filed herewith.

### A. <u>The Policies</u>

Travelers issued a commercial general liability policy to Notias for the policy period of July 31, 2020 to July 31, 2021 (the "Travelers Policy"). *See* L. Civ. R. 56.1 Statement at ¶ 1. Subject to its terms and conditions, the Travelers Policy provides coverage for bodily injury that occurs during the policy period and is caused by an accident. *See id*. at ¶ 2. The Travelers Policy contains "other insurance" provisions that provide that coverage under the Travelers Policy is excess over any "other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." *Id*. at ¶ 3.

Hudson issued a commercial general liability policy to Jind for the policy period June 6, 2020 to June 6, 2021 (the "Hudson Policy"). *See* L. Civ. R. 56.1 Statement at ¶ 4. Subject to its terms and conditions, the Hudson Policy provides coverage for bodily injury that occurs during the policy period and is caused by an accident. *See id*. at ¶ 5.

The Hudson Policy includes endorsement CG 20 37 04 13 entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS" (the "Hudson AI Endorsement"), which provides:

2

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| As required by written contract. | As required by written contract. |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

L. Civ. R. 56.1 Statement at ¶ 8. The "products-completed operations hazard" includes all bodily injury occurring away from Jind's premises and arising out of Jind's completed or abandoned work. *See id*. at ¶ 7; *see also id*. at ¶ 6.

With respect to "other insurance," the Hudson Policy provides:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

3

[…]

**d.** Where you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract

L. Civ. R. 56.1 Statement at ¶¶ 9-10.

Steadfast issued a commercial general liability policy to Kiska for the policy period September 4, 2020 to September 4, 2021 (the "Steadfast Policy"). *See* L. Civ. R. 56.1 Statement at ¶ 11. Subject to its terms and conditions, the Steadfast Policy provides coverage for bodily injury that occurs during the policy period and is caused by an accident. *See id.* at ¶ 12.

The Steadfast Policy includes endorsement U-GL-1175-F CW (04/13) entitled "Additional Insured – Automatic – Owners, Lessees Or Contractors" (the "Steadfast AI Endorsement"), which provides:

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

[…]

4

**D.** For the purposes of the coverage provided by this endorsement:

   **1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions:**

   **Primary and Noncontributory insurance**

   This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

   **a.** The additional insured is a Named Insured under such other insurance; and

   **b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

L. Civ. R. 56.1 Statement at ¶ 15. The "products-completed operations hazard" includes all bodily injury occurring away from Kiska's premises and arising out of Kiska's completed or abandoned work. *See id*. at ¶ 14; *see also id*. at ¶ 13.

With respect to "other insurance," the Steadfast Policy provides:

   **a. Primary Insurance**

   This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

L. Civ. R. 56.1 Statement at ¶ 16.

   **A. The Jind Subcontract and Invoice**

Notias and Jind entered into a Subcontract Agreement dated October 9, 2017 (the "Jind Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 E. 112th St., New York, NY. *See* L. Civ. R. 56.1 Statement at ¶ 17. Article 13 of the Jind Subcontract required Jind to purchase and maintain certain insurance coverage, including:

5

A. Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence, $2,000,000 Annual Aggregate and $2,000,000 products completed operations aggregate. However, Subcontractor's insurance coverage shall apply for the full amount of any loss up to each respective policy limit of liability and shall not be limited to the minimum required limits of this Agreement. […]

   i. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each product.

   ii. CGL coverage shall be written on ISO Occurrence form CG 00 01 1001 or a substitute form providing equivalent coverage and shall provide complete contractual liability coverage as well as cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury, and permit and provide for a waiver of subrogation for all Additional Insureds.

   iii. General Contractor, Owner and all other parties required of the General Contractor shall be included as Additional Insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 (10/01) AND CG 20 37 or CG 2038 04 13 AND CG 20 37 or an endorsement providing equivalent coverage to the Additional Insureds. A list of the required Additional Insureds is annexed hereto as **Attachment "1"**. Insurance for the Additional Insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds. This Agreement may be amended from time-to-time to include additional individuals and entities who may be required to be named as Additional Insureds on Subcontractor's relevant policies of insurance.

   iv. Subcontractor shall maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

[…]

F. Certificates of Insurance in triplicate shall be furnished the Owner and Contractor by the Subcontractor and any of its subsubcontractors prior to commencement of Work detailing all insurance required of the Subcontractor and shall state Notias Construction, Inc., 29-10-120th Street, Flushing, New York 11354, and the other required Additional Insureds by name. The insurance policy shall provide by its terms or by endorsement that the Subcontractor's insurance carrier shall provide Contractor shall be given thirty (30) days prior written notice of material change, cancellation, or non-renewal of coverage indicated therein by Certified Mail.

*Id.* at ¶ 18. The "Required Additional Insureds" attachment to the Jind Subcontract listed Notias, Hope East of Fifth LLC, Hope East of Fifth Housing Development Fund Company, Inc., and others. *See id.* at ¶ 19.

As required by Article 13 of the Jind Subcontract, Jind produced a Certificate of Liability Insurance to Notias which identified the Hudson Policy and included the following description:

> The coverage is broad enough to cover all the operations of the insured as per policy terms & conditions.
> Project Name: Hope East of Fifth Apartments
> Project Description: The modernization and renovation of approximately 506 multifamily residential units located across 39 buildings including certain interior and exterior common area work. Total Buildings SEE PAGE 2
> […]
> As required by written contract, coverage applies to the certificate holder and all named/listed
> Additional Insureds on a primary/non-contriutory basis, for both ongoing and completed operations, with a 30 days notice of cancellation or non-renewal (except 10 days for non-payment of premium). Premiums have been paid.
> The Following are included as Additional Insured's, as required by written contract:
> Hope East of Fifth LLC (Beneficial Owner)
> c/o Hope Community, Inc
> 174 East 104th St.
> New York, NY 10029
> Hope East of Fifth Housing Development Fund Company, Inc. (Title Holder)
> c/o Hope Community, Inc
> 174 East 104th St.
> New York, NY 10029
> […]
> Notias Construction, Inc
> 29-10 120th Street
> Flushing, NY 11354

L. Civ. R. 56.1 Statement at ¶ 20.

7

Jind issued "Invoice 334E 112st" dated March 7, 2018 (the "Jind Invoice") to Notias in connection with its work under the Jind Subcontract. *See* L. Civ. R. 56.1 Statement at ¶ 21. The Jind Invoice encompassed the following work:

1. Building Main entrance gate not in working condition
2. Door frame loose , new concrete poured to hold frame in place
3. Hinges were replaced as they were broken not allowing the door to open and close with ease
4. Primer and paint

*Id*.

## B. The Kiska Subcontract and Payment Application

Notias and Kiska entered into a Subcontract Agreement dated September 1, 2017 (the "Kiska Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 E. 112th St., New York, NY. *See* L. Civ. R. 56.1 Statement at ¶ 22. Article 13 of the Kiska Subcontract required Kiska to purchase and maintain certain insurance coverage, including:

A. Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence, $2,000,000 Annual Aggregate and $2,000,000 products completed operations aggregate. However, Subcontractor's insurance coverage shall apply for the full amount of any loss up to each respective policy limit of liability and shall not be limited to the minimum required limits of this Agreement. […]

i. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each product.

ii. CGL coverage shall be written on ISO Occurrence form CG 00 01 1001 or a substitute form providing equivalent coverage and shall provide complete contractual liability coverage as well as cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury, and permit and provide for a waiver of subrogation for all Additional Insureds.

iii. General Contractor, Owner and all other parties required of the General Contractor shall be included as Additional Insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 (10/01) AND CG 20 37 or CG 2038 04 13 AND CG 20 37 or an endorsement providing equivalent coverage to the

8

Additional Insureds. A list of the required Additional Insureds is annexed hereto as **Attachment "1"**. Insurance for the Additional Insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds. This Agreement may be amended from time-to-time to include additional individuals and entities who may be required to be named as Additional Insureds on Subcontractor's relevant policies of insurance.

iv. Subcontractor shall maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

[…]

F. Certificates of Insurance in triplicate shall be furnished the Owner and Contractor by the Subcontractor and any of its subsubcontractors prior to commencement of Work detailing all insurance required of the Subcontractor and shall state Notias Construction, Inc., 29-10-120th Street, Flushing, New York 11354, and the other required Additional Insureds by name. <u>The insurance policy shall provide by its terms or by endorsement that the Subcontractor's insurance carrier shall provide Contractor shall be given thirty (30) days prior written notice of material change, cancellation, or non-renewal of coverage indicated therein by Certified Mail.</u>

*Id*. at ¶ 23. The "Required Additional Insureds" attachment to the Kiska Subcontract listed Notias, Hope East of Fifth LLC, Hope East of Fifth Housing Development Fund Company, Inc., and others. *See id*. at ¶ 24.

Thereafter, Kiska submitted an application and certificate for payment to Notias dated February 28, 2019 (the "Kiska Payment Application") for work performed in connection with the Kiska Subcontract. *See* L. Civ. R. 56.1 Statement at ¶ 25. The Kiska Payment Application indicates that work was performed at "334 E112 St" and that all materials and labor in connection with the key fob system was 100% complete. *See id*. at ¶ 26.

### C. The Incident and Underlying Action

Claimant claims to have been injured when a piece of metal detached from the entry system/lock on the metal gateway that borders the north side of the premises located at 334 E. 112th St., New York, NY on October 2, 2020. *See* L. Civ. R. 56.1 Statement at ¶ 27; *see also id*. at ¶ 37. Claimant filed suit seeking damages as a result of the alleged accident against Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, and Hope Community, Inc. in the Supreme Court of the State of New York, County of New York, under Index No. 151176/2021 (the "Underlying Action"), on February 3, 2021. *See id*. at ¶ 28. The original defendants in the Underlying Action asserted third-party claims against Notias and Jind Construction Inc. on November 18, 2021, and Kiska and Jind on February 16, 2023. *See id*. at ¶¶ 29, 32.

Claimant filed a second suit seeking damages as a result of the alleged accident against Notias and Jind Construction Inc. in the Supreme Court of the State of New York, County of New York, under Index No. 151263/2022 (the "Second Action"), on February 10, 2022. *See* L. Civ. R. 56.1 Statement at ¶ 30. On or about July 6, 2022, the Second Action was consolidated into the Underlying Action. *See id*. at ¶ 31. Claimant amended her complaint in the Underlying Action to add Jind as a direct defendant on March 14, 2023. *See* L. Civ. R. 56.1 Statement at ¶ 33. Claimant amended her complaint in the Underlying Action to add Kiska as a direct defendant on April 16, 2023. *See id*. at ¶ 34.

The Underlying Action asserts claims of negligence against Hope East of Fifth Housing Development Fund Company, Inc., Hope East of Fifth LLC, Hope Community, Inc., Notias, Jind, Kiska, and Jind Construction Inc. *See* L. Civ. R. 56.1 Statement at ¶ 35. Specifically, Claimant alleges the defendants were negligent in, *inter alia*, "failing to provide an appropriate means of

ingress, egress, entrance and/or exit at said premises;" "failing to maintain the equipment, locks and/or entry system on, at, and/or appurtenant to the premises;" and "negligently maintaining the equipment locks and/or entry system on, at, and/or appurtenant to the premises[.]" *Id.* at ¶ 36.

Dispositive motion practice has not yet begun as discovery in the Underlying Action remains ongoing. *See* L. Civ. R. 56.1 Statement at ¶ 38.

### D. Tenders to Defendants

By correspondence dated March 25, 2022, Travelers timely tendered the defense and indemnification of Notias to Jind in connection with the Underlying Action and Second Action. *See* L. Civ. R. 56.1 Statement at ¶ 39. By correspondence dated April 18, 2022, Travelers retendered the defense and indemnity of Notias to Jind. *See id.* at ¶ 40. By correspondence dated May 20, 2022, Travelers tendered the defense and indemnity of Notias to Hudson. *See id.* at ¶ 41. Travelers retendered the defense and indemnification of Notias to Hudson on June 23, 2022, August 2, 2022, September 7, 2022, May 2, 2023, July 11, 2023, and February 6, 2024. *See id.* at ¶¶ 42-7. Hudson did not respond to Travelers' tender correspondence. *See id.* at ¶ 48. To date, Hudson has not assumed or contributed to the defense of Notias in the Underlying Action. *See id.* at ¶ 49.

By correspondence dated November 14, 2023, Travelers timely tendered the defense and indemnification of Notias to Kiska in connection with the Underlying Action. *See* L. Civ. R. 56.1 Statement at ¶ 50. By correspondence dated May 20, 2022, Travelers tendered the defense and indemnity of Notias to Steadfast. *See id.* at ¶ 51. Steadfast did not respond to Travelers' tender correspondence. *See id.* at ¶ 52. To date, Steadfast has not assumed or contributed to the defense of Notias in the Underlying Action. *See id.* at ¶ 53. Travelers has been and continues to provide Notias a defense in the Underlying Action. *See id.* at ¶ 54. Travelers has incurred and continues to

incur expenses, presently totaling approximately $48,866.11, associated with providing said defense. *Id*. at ¶¶ 55-6.

<strong><u>LEGAL STANDARD</u></strong>

### A. <u>Summary Judgment</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of "demonstrating the absence of any genuine dispute as to a material fact rests with the moving party." *Zurich Am. Ins. v. Harleysville Ins. Co.*, 194 F.Supp.3d 253, 257 (S.D.N.Y. July 7, 2016).

"An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court will "draw all factual inferences and resolve all ambiguities in favor of the non-moving party." *Coyle v. U.S.*, 954 F.3d 146, 148 (2d Cir. 2020). "When the dispute hinges on contract interpretation, 'summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity." *Zurich Am. Ins.*, 194 F.Supp.3d at 257, *quoting Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

### B. <u>Duty to Defend</u>

Under New York law, "it is well settled that an insurer's duty to defend [an insured] is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest … a reasonable possibility of coverage.'" *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302 (2007), *quoting Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006).

12

"If [a] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Regal Constr. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338 (2010) (internal quotation marks and citations omitted); *see also Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F.Supp.3d 534, 542 (S.D.N.Y. Mar. 28, 2018). "This standard applies equally to additional insureds and named insureds." *Regal Constr. Corp.*, 15 N.Y.3d at 37; *see also Arch Specialty Ins. Co. v. Farm Family Cas. Ins. Co.*, 238 F.Supp.3d 604, 612 (S.D.N.Y. Mar. 3, 2017). "Any ambiguity as to the insurer's duty to defend is resolved in favor of the insured." *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *see also Olin Corp. v. Insurance Co. of N. Am.*, 218 F.Supp.3d 212, 216 (S.D.N.Y. Nov. 21, 2016); *Charles F. Evans Co. v. Zurich Ins. Co.*, 95 N.Y.2d 779, 780-1, 710 N.Y.S.2d 301 (2000).

The duty to defend "arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982 (1997) , *quoting Fitzpatrick v. American Honda Motor*, 78 N.Y.2d 61, 65-7, 571 N.Y.S.2d 672 (1991). "Where allegations 'fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be,' there is a duty to defend." *Century 21, Inc. v. Diamond State Ins.*, 442 F.3d 79, 82 (2d Cir. 2006), *quoting Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873 (1984). "An insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Allianz Ins. Co. v. Lerner*, 416 F.3d 109,

115 (2d Cir. 2005), *quoting Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139 (1985).

**ARGUMENT**

**I.     HUDSON HAS A DUTY TO DEFEND NOTIAS BECAUSE THERE IS A REASONABLE POSSIBLITY THAT JIND'S ACTS OR OMISSIONS PROXIMATELY CAUSED CLAIMANT'S INJURIES**

Hudson has a duty to defend Notias and must reimburse Travelers for all post-tender costs and fees incurred, because the allegations set forth in the Underlying Action create a reasonable possibility of coverage under the Hudson Policy. *See BP Air Conditioning Corp.*, 8 N.Y.3d 714. The Hudson AI Endorsement affords additional insured coverage to Notias for liability "caused, in whole or in part, by" Jind's completed work. *See* L. Civ. R. 56.1 Statement at ¶¶ 6-8. Under New York law, this exact triggering language has been found to provide additional insured coverage where the underlying injury is proximately caused by the named insured or those acting on the named insured's behalf. *See, e.g., Burlington Ins. Co. v. NYC Tr. Auth.*, 29 N.Y.3d 313, 321-3, 57 N.Y.S.3d 85 (2017); *Consolidated Edison Co. of N.Y. v. ACE Am. Ins. Co.*, 673 F.Supp.3d 475, 487 (S.D.N.Y. 2023) (holding identical language triggered duty to defend where the information known to the defendant indicated a reasonable possibility that its named insured's conduct proximately caused the loss).

Here, Claimant alleges she was caused to sustain injuries when she was struck by a piece of metal that detached from a gateway outside her apartment building on October 3, 2020. *See* L. Civ. R. 56.1 Statement at ¶¶ 27, 37. Prior to the alleged accident, on October 9, 2017, Jind was retained to perform certain work in connection with the modernization and renovation of the Hope East of Fifth Apartments. *See id*. at ¶ 17. The Jind Invoice affirmatively demonstrates that Jind performed work at the accident location and on the subject gate. *See id*. at ¶ 21. Pursuant to Article

14

13 of the Jind Subcontract, Jind was required to "maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work." *See id*. at ¶ 18. The Jind Invoice is dated March 7, 2018, approximately two years and seven months prior to Claimant's accident. *See id*. at ¶ 21; *see also id*. at ¶ 27. As such, Jind's own records suggest a reasonable possibility of coverage under the Hudson Policy.

In addition, Claimant alleges causes of action sounding in negligence directly against Jind in the Underlying Action. *See* L. Civ. R. 56.1 Statement at ¶¶ 33, 35. Particularly, Claimant alleges the accident occurred due to the negligent maintenance of the "equipment locks and/or entry system" on the subject metal gateway. *See id*. at ¶ 36. Jind's records suggest that Jind performed work on the gateway because it was "not in working condition" at the time. *See id*. at ¶ 21. These records coupled with the allegations in the Underlying Action undeniably suggest a reasonable possibility that Jind's work at the accident site proximately caused the loss alleged.

Pursuant to the terms of the Hudson Policy, Notias is entitled to coverage as additional insureds for liability caused, in whole or in part, by Jind's work at the Hope East of Fifth Apartments. *See* L. Civ. R. 56.1 Statement at ¶ 8. In the Underlying Action, Claimant alleges she was caused to be injured by the entry system/lock on the metal gateway at the premises located at 334 E. 112th St., New York, NY. *See id.* at ¶¶ 27. Both the underlying pleadings and the extrinsic evidence suggest that Jind performed work on the metal gate within three years of Claimant's accident. *See id*. at ¶¶ 21, 33, 35. Because there is a reasonable possibility that Claimant's alleged injuries were proximately caused by Jind's work on the metal gate, Hudson has a duty to defend Notias in the Underlying Action.

**II. STEADFAST HAS A DUTY TO DEFEND NOTIAS BECAUSE THERE IS A REASONABLE POSSIBLITY THAT KISKA'S ACTS OR OMISSIONS PROXIMATELY CAUSED CLAIMANT'S INJURIES**

Likewise, Steadfast has a duty to defend Notias because the allegations set forth in the Underlying Action create a reasonable possibility of coverage under the Steadfast Policy. *See BP Air Conditioning Corp.*, 8 N.Y.3d 714. The Steadfast AI Endorsement affords additional insured coverage to Notias for liability "caused, in whole or in part, by" Kiska's completed work. *See* L. Civ. R. 56.1 Statement at ¶ 13-5. Since this endorsement language has been interpreted to provide coverage to additional insureds when the named insured proximately caused the underlying injury (*see, e.g., Burlington Ins. Co.*, 29 N.Y.3d at 321-3; *Consolidated Edison Co. of N.Y.*, 673 F.Supp.3d at 487), coverage is clearly triggered by virtue of the factual allegations in the Underlying Action.

Claimant alleges she was injured by the "equipment locks and/or entry system" on the gateway outside her apartment building. *See* L. Civ. R. 56.1 Statement at ¶¶ 27, 36. On September 1, 2017, Kiska was retained to perform work in connection with the modernization and renovation of the Hope East of Fifth Apartments, including Claimant's building. *See id*. at ¶ 22. Kiska's Payment Application to Notias establishes that Kiska installed, among other upgrades, a key fob system at the accident location. *See id*. at ¶ 26. Pursuant to Article 13 of the Kiska Subcontract, Kiska was required to "maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work." *See id*. at ¶ 23. The Kiska Payment Application is dated February 28, 2019, approximately one year and seven months prior to Claimant's accident. *See id*. at ¶ 25; *see also id*. at ¶ 27. Therefore, Kiska's records also suggest a reasonable possibility of coverage under the Steadfast Policy.

Additionally, Claimant alleges causes of action sounding in negligence directly against Kiska in the Underlying Action. *See* L. Civ. R. 56.1 Statement at ¶¶ 34-5. Particularly, Claimant alleges the accident occurred due to the negligent maintenance of the "equipment locks and/or entry system" on the subject metal gateway. *See id*. at ¶ 36. Kiska's Payment Application demonstrates that Kiska installed the key fob entry system at the loss location. *See id*. at ¶ 26. These records coupled with the allegations in the Underlying Action clearly suggest a reasonable possibility that Kiska's work at the accident site proximately caused the alleged loss.

Pursuant to the terms of the Steadfast Policy, Notias is entitled to coverage as an additional insured for liability caused, in whole or in part, by Kiska's work at the Hope East of Fifth Apartments. *See* L. Civ. R. 56.1 Statement at ¶ 15. In the Underlying Action, Claimant alleges she was caused to be injured by the entry system that Kiska previously installed at the premises. *See id.* at ¶¶ 25-7, 36-7. Because there is a reasonable possibility that Claimant's alleged injuries were proximately caused by Kiska's installation of the key fob system, Steadfast has a duty to defend Notias in the Underlying Action.

## III. THE COVERAGE PROVIDED BY THE TRAVELERS POLICY IS EXCESS TO THE COVERAGES PROVIDED BY THE HUDSON POLICY AND THE STEADFAST POLICY

"Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. American Cas. Co. of Reading, PA*, 65 A.D.3d 12, 18, 878 N.Y.S.2d 339 (1st Dept. 2009).

The Hudson Priority Endorsement provides that the Hudson Policy will be primary when Jind agrees in a written contract to provide primary and non-contributory coverage. *See* L. Civ. R.

56.1 Statement at ¶ 10. The Jind Subcontract expressly requires that Jind's insurance "shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds." *See id*. at ¶ 18. As such, the Hudson Policy is primary to the Travelers Policy.

The Steadfast AI Endorsement provides that coverage provided by the Steadfast AI Endorsement will be primary when Kiska is required by written contract to provide primary and non-contributory coverage, and the additional insured is a named insured under the other insurance available. *See* L. Civ. R. 56.1 Statement at ¶ 15. The Kiska Subcontract expressly requires that Kiska's insurance "shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds." *See id*. at ¶ 23. Since Notias is Travelers' named insured (*see id*. at ¶ 1), the Steadfast Policy is also primary to the Travelers Policy.

By contrast, the Travelers Policy contains "other insurance" provisions that provide that coverage under the Travelers Policy is excess over "[a]ny of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." L. Civ. R. 56.1 Statement at ¶ 3. Since Notias is entitled to coverage as an additional insured under the Hudson Policy, the Travelers Policy is rendered excess to the Hudson Policy. Likewise, because Notias is entitled to coverage as an additional insured under the Steadfast Policy, the Travelers Policy is rendered excess to the Steadfast Policy. Accordingly, Hudson's and Steadfast's coverage obligations are primary, and Travelers is entitled to reimbursement of all post-tender costs and fees incurred in defending Notias in the Underlying

18

Action. *See Village of Brewster v. Virginia Sur. Co., Inc.*, 70 A.D.3d 1239, 1242-3, 896 N.Y.S.2d 203 (3d Dept. 2010).

### CONCLUSION

For the reasons set forth herein, this Court should grant summary judgment in favor of Travelers, entering an Order: (1) declaring that (a) Hudson has a duty to defend Notias in connection with the Underlying Action; (b) Hudson's coverage obligations to Notias in connection with the Underlying Action are primary; (c) Travelers' coverage obligations are excess to those of Hudson with respect to the Underlying Action; (2) declaring that (a) Steadfast has a duty to defend Notias in connection with the Underlying Action; (b) Steadfast's coverage obligations to Notias in connection with the Underlying Action are primary; (c) Travelers' coverage obligations are excess to those of Steadfast with respect to the Underlying Action; and granting an award in Travelers' favor against Hudson and Steadfast for all sums Travelers has paid in defending Notias in the Underlying Action, plus interest; scheduling an inquest on damages; and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 13, 2024

USERY & ASSOCIATES


      /s/Lisa Szczepanski

By:   Lisa Szczepanski
*Attorneys for The Travelers Indemnity Company of Connecticut*
Mailing Address:
P.O. Box 2996
Hartford, CT 06104
T. (917) 778-6680
F. (844) 571-3789
E. lszczepa@travelers.com