UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>               Plaintiff,<br><br>v.<br><br>HUDSON EXCESS INSURANCE COMPANY and STEADFAST INSURANCE COMPANY,<br><br>               Defendant(s). | 24 Civ. 1523 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

This is an insurance coverage dispute in which Plaintiff, The Travelers Indemnity Company of Connecticut ("Travelers"), seeks, *inter alia*, a declaration that Defendants Hudson Excess Insurance Company ("Hudson") and Steadfast Insurance Company ("Steadfast") have a duty to defend Notias Construction, Inc. ("Notias") in connection with an underlying personal injury action, *Anabel Rebollar v. Hope East of Fifth Housing Development Fund Company, et al.*, pending in the Supreme Court of the State of New York, County of New York, IndexNo. 151176/2021 (the "Underlying Action"). For the reasons set forth below, Travelers' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, Hudson's cross-motion for summary judgment is **DENIED**, and Steadfast's cross-motion for summary judgment is **GRANTED**.

## BACKGROUND[1]

### A.    The Underlying Action

This matter arises out of an accident at 334 East 112th Street, New York, New York (the "Premises"). *See* Pl.'s Loc. Civ. R. 56.1 Statement of Material Facts ("Pl.'s SOF") ¶ 27, ECF No. 39.  The plaintiff in the Underlying Action, Anabel Rebollar, alleged that while returning home to her apartment on October 3, 2020, she was injured by the entry system/lock on the metal gateway that borders the north side of the Premises. *See id.*  Steadfast's named insured, Kiska Solutions, Inc., had been subcontracted by Travelers' named insured, Notias, to perform modernization and renovation work at the Premises, which included installing key-fob systems. *See* Steadfast Loc. Civ. R. 56.1 Statement of Material Facts ("Steadfast SOF") ¶¶ 1, 8, ECF No. 41-3.  Notias had also entered into a subcontract with Hudson's named insured, Jind Construction, Inc. ("Jind"), to perform work at the Premises, including modernization and renovation of the Premises' main building gate. *See id.* ¶¶ 4, 10-11.

Rebollar brought suit seeking damages as a result of the alleged accident against Hope East of Fifth Housing Development Fund Company, Inc.; Hope East of Fifth LLC; and Hope Community, Inc. (collectively, the "Hope Housing Entities") in New York County Supreme Court on February 3, 2021. *See* Pl.'s SOF ¶ 28.  The Hope Housing Entities asserted third-party claims against Notias and Jind on November 18, 2021, and against Kiska and Jind on February 16, 2023.

---

[1] The facts described herein are drawn from the parties' submissions in support of and in opposition to the cross-motions for summary judgment, as well as the affidavits and exhibits attached to the motion papers, and are undisputed except where otherwise noted.  The parties here often purport to dispute their counterparties' statements of fact only by noting that the statement quotes from a document that speaks for itself.  In such cases, the Court quotes from the document itself rather than from the party's reproduction of quoted language in its Local Civil Rule 56.1 statement.  Otherwise, citations to a party's Local Civil Rule 56.1 statement incorporate by reference the documents cited therein.

*See id.* ¶¶ 29, 32.  Rebollar filed a second suit against Notias and Jind in the Supreme Court of the State of New York, County of New York, under Index No. 151263/2022 (the "Second Action"), on February 10, 2022.  *See id.* ¶ 30.  The Second Action was later consolidated into the Underlying Action.  *See id.* ¶ 31.  Rebollar amended her complaint in the Underlying Action to add Jind as a direct defendant on March 14, 2023, *see id.* ¶ 33, and amended it again to add Kiska as a direct defendant on April 16, 2023.  *See id.* ¶ 34.

The Underlying Action asserts claims of negligence against the Hope Housing Entities, Notias, Jind, and Kiska.  *See id.* ¶ 35.  Specifically, Rebollar alleges that the underlying defendants were negligent in, *inter alia*, "failing to provide an appropriate means of ingress, egress, entrance and/or exit at said premises"; "failing to maintain the equipment, locks and/or entry system on, at, and/or appurtenant to the premises"; and "negligently maintaining the equipment locks and/or entry system on, at, and/or appurtenant to the premises."  *Id.* ¶ 36.  As of the submission of the parties' cross-motions for summary judgment in this case, discovery in the Underlying Action remained ongoing.  *See id.* ¶ 38.

### B.    The Insurance Policies

***Travelers Policy.***  Travelers issued a commercial general liability policy to Notias for the policy period of July 31, 2020 to July 31, 2021 (the "Travelers Policy").  *See* Pl.'s SOF ¶ 1; Prevete Decl. Ex. 1, ECF Nos. 37-1 to 37-7.  The Travelers Policy contains "Other Insurance" provisions that provide that coverage under the Travelers Policy is excess over any "other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance."  Pl.'s SOF ¶ 3; Prevete Decl. Ex. 1 at TRV000102, ECF No. 37-2.

***Hudson Policy.***  Hudson issued a commercial general liability policy to Jind for the policy period June 6, 2020 to June 6, 2021 (the "Hudson Policy").  Pl.'s SOF ¶ 4; Szczepanski Decl.

Ex. 2, ECF No. 38-1.  The Hudson Policy includes an endorsement entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS" (the "Hudson Additional Insured Endorsement"), which provides:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

Szczepanski Decl. Ex. 2 at HUD0039.  Under "Name Of Additional Insured Person(s) or Organization(s)" and "Location and Description Of Completed Operations," the Endorsement's schedule lists: "As required by written contract."  *Id.*  The Hudson Policy defines "products-completed operations hazard" to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your[2] product' or 'your work'" except for "[p]roducts that are still in your physical possession" or "[w]ork that has not yet been completed or abandoned."  *Id.* at HUD0025.  With respect to "Other Insurance," the Hudson Policy provides:

> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
> **b. Excess Insurance**
>
> > (1) This insurance is excess over:
> >
> > > (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

---

[2] The Hudson Policy provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  Szczepanski Decl. Ex. 2 at HUD 0011.

4

[ . . . ]

    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

Szczepanski Decl. Ex. 2 at HUD0021.  The Hudson Policy also contains an endorsement entitled "PRIMARY AND NON-CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT" (the "Hudson Priority Endorsement"), which adds the following to the "Other Insurance" provisions quoted above:

**d. Primary and Non-Contributing Insurance**

Where you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

*Id.* at HUD0063.

    ***Steadfast Policy.***  Steadfast issued a commercial general liability policy to Kiska for the policy period September 4, 2020 to September 4, 2021 (the "Steadfast Policy").  Pl.'s SOF ¶ 11; Szczepanski Decl. Ex. 3, ECF No. 38-2.  The Steadfast Policy includes an endorsement entitled "Additional Insured – Automatic – Owners, Lessees Or Contractors" (the "Steadfast Additional Insured Endorsement"), which provides:

    A. Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

      **1.** Your acts or omissions; or

      **2.** The acts or omissions of those acting on your behalf, in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

**B.** [ . . . ]

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV - Commercial General Liability Conditions**:

The additional insured must see to it that:

    **1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

    **2.** We receive written notice of a claim or "suit" as soon as practicable: and

    **3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

    1. The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions:**

    **Primary and Noncontributory insurance**

    This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

    **a.** The additional insured is a Named Insured under such other insurance; and

    **b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

Szczepanski Decl. Ex. 3 at STEADFAST000474-75. With respect to notice, the Steadfast Policy

includes the following provision that "supersedes any provision to the contrary":

> Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

Szczepanski Decl. Ex. 3 at STEADFAST000457. With respect to "Other Insurance," the Steadfast

Policy provides:

>    **a. Primary Insurance**
>
>    This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
>    **b. Excess Insurance**
>
>    > **(1)** This insurance is excess over:
>    >
>    > > **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
>    > >
>    > > > **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>    > > >
>    > > > **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>    > > >
>    > > > **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
>    > > >
>    > > > **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.
>    > >
>    > > **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
>    >
>    > **(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*Id.* at STEADFAST000424.

C.    **The Jind Subcontract**

Notias and Jind entered into a Subcontract Agreement dated October 9, 2017 (the "Jind Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 East 112th Street, New York, NY.  Szczepanski Decl. Ex. 4 at HUD 0773, 806, 815, ECF No. 38-3.  Article 13 of the Jind Subcontract required Jind to purchase and maintain certain insurance coverage, including:

> A.  Commercial General Liability (CGL) with limits of Insurance of not less than $1,000,000 each occurrence, $2,000,000 Annual Aggregate and $2,000,000 products completed operations aggregate.  However, Subcontractor's insurance coverage shall apply for the full amount of any loss up to each respective policy limit of liability and shall not be limited to the minimum required limits of this Agreement. […]
>
>   i.  If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each product.
>
>   ii.  CGL coverage shall be written on ISO Occurrence form CG 00 01 1001 or a substitute form providing equivalent coverage and shall provide complete contractual liability coverage as well as cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury, and permit and provide for a waiver of subrogation for all Additional Insureds.
>
>   iii.  General Contractor, Owner and all other parties required of the General Contractor shall be included as Additional Insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 10 (10/01) AND CG 20 37 or CG 2038 04 13 AND CG 20 37 or an endorsement providing equivalent coverage to the Additional Insureds. A list of the required Additional Insureds is annexed hereto as Attachment "1". Insurance for the Additional Insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds.  This Agreement may be amended from time-to-time to include additional individuals and entities who may be required to be named as Additional Insureds on Subcontractor's relevant policies of insurance.
>
>   iv.  Subcontractor shall maintain CGL coverage for itself and all Additional Insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

[. . .]

F.  Certificates of Insurance in triplicate shall be furnished the Owner and Contractor by the Subcontractor and any of its subsubcontractors prior to commencement of Work detailing all insurance required of the Subcontractor and shall state Notias Construction, Inc., 29-10-120th Street, Flushing, New York 11354, and the other required Additional Insureds by name. <u>The insurance policy shall provide by its terms or by endorsement that the Subcontractor's insurance carrier shall provide Contractor shall be given thirty (30) days prior written notice of material change, cancellation, or non-renewal of coverage indicated therein by Certified Mail.</u>

Szczepanski Decl. Ex. 4 at HUD 0792, 794. The "Required Additional Insureds" attachment to the Jind Subcontract lists Notias, Hope East of Fifth LLC, and Hope East of Fifth Housing Development Fund Company, Inc., among others. *Id.* at HUD 0807.

Jind provided Notias with a Certificate of Liability Insurance identifying the Hudson Policy and including the following description:

The coverage is broad enough to cover all the operations of the insured as per policy terms & conditions.

Project Name: Hope East of Fifth Apartments.

Project Description: The modernization and renovation of approximately 506 multifamily residential units located across 39 buildings including certain interior and exterior common area work. [. . .]

As required by written contract, coverage applies to the certificate holder and all named/listed Additional Insureds on a primary/non-contriutory [sic] basis, for both ongoing and completed operations, with a 30 days notice of cancellation or non-renewal (except 10 days for non-payment of premium). Premiums have been paid.

The Following are included as Additional Insured's [sic], as required by written contract:

[. . .]

Notias Construction, Inc. [. . .]

Szczepanski Decl. Ex. 4 at HUD 0824-25.

On March 7, 2018, Jind issued an invoice (the "Jind Invoice") to Notias in connection with its work under the Jind Subcontract. Prevete Decl. Ex. 7, ECF No. 37-10. The Jind Invoice encompassed the following work:

1. Building Main entrance gate not in working condition

2. Door frame loose ,[sic] new concrete poured to hold frame in place

3. Hinges were replaced as they were broken not allowing the door to open and close with ease

4. Primer and paint

*Id.*

### D.    The Kiska Subcontract

Notias and Kiska entered into a Subcontract Agreement dated September 1, 2017 (the "Kiska Subcontract") in connection with the modernization and renovation of the Hope East of Fifth Apartments, including 334 East 112th Street, New York, NY. Szczepanski Decl. Ex. 8 at STEADFAST000346, 379, 389, ECF No. 38-6. Article 13 of the Kiska Subcontract required Kiska to purchase and maintain certain insurance coverage, using language identical to that quoted above from the Jind Subcontract. *Id.* at STEADFAST000365-66. The "Required Additional Insureds" attachment to the Kiska Subcontract lists Notias, Hope East of Fifth LLC, and Hope East of Fifth Housing Development Fund Company, Inc., among others. *Id.* at STEADFAST000380.

Kiska submitted an application and certificate for payment to Notias dated February 28, 2019 (the "Kiska Payment Application") for work performed in connection with the Kiska Subcontract. Prevete Decl. Ex. 9 at TRV001072-74, ECF No. 37-11. The Kiska Payment Application indicates that work was performed at "334 E112 St" and that all materials and labor in connection with the key fob system were 100% complete. *Id.* at TRV001073-74.

### E.    Travelers' Tenders

On March 25, 2022, Travelers tendered the defense and indemnification of Notias to Jind in connection with the Underlying Action and Second Action.  Prevete Decl. Ex. 19, ECF No. 37-13.  On April 18, 2022, Travelers retendered the defense and indemnity of Notias to Jind. Szczepanski Decl. Ex. 20, ECF No. 38-17.  On May 20, 2022, Travelers tendered the defense and indemnity of Notias to Hudson.  Prevete Decl. Ex. 21 at TRV001471-2, ECF No. 37-14.  Travelers retendered the defense and indemnification of Notias to Hudson on June 23, 2022; August 2, 2022; September 7, 2022; May 2, 2023; July 11, 2023; and February 6, 2024.  *See* Pl.'s SOF ¶¶ 42-47. Hudson did not respond to Travelers' tender correspondence.  *See id.* ¶ 48; Prevete Decl. ¶ 18, ECF No. 37.[3]  To date, Hudson has not assumed or contributed to the defense of Notias in the Underlying Action.  Pl.'s SOF ¶ 49; Prevete Decl. ¶ 19.

On November 14, 2023, Travelers tendered the defense and indemnification of Notias to Kiska in connection with the Underlying Action.  Pl.'s SOF ¶ 50.  On February 6, 2024, Travelers tendered the defense and indemnity of Notias to Steadfast.  *Id.* ¶ 51.  Steadfast did not respond to Travelers' tenders.  *Id.* ¶ 52.  Steadfast has not assumed or contributed to the defense of Notias in the Underlying Action.  *Id.* ¶ 53.

Travelers has been providing and continues to provide Notias a defense in the Underlying Action.  *Id.* ¶ 54.  To date, Travelers has incurred expenses totaling approximately $48,866.11 in providing Notias a defense.  *Id.* ¶¶ 55-56.

---

[3] Hudson purports to dispute this statement but does not offer any evidence to contradict it.  *See* Hudson Resp. Pl.'s SOF ¶ 48, ECF No. 45.

## F.    Procedural History

Travelers brought this action on February 28, 2024, seeking, *inter alia*, a declaration that Hudson and Steadfast have a duty to defend Notias in the Underlying Action.  *See* Compl., ECF No. 1.  On December 13, 2024 and January 10, 2025, the parties cross-moved for summary judgment.  *See* ECF Nos. 36, 41, 42.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236.  But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477

---

[4] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e) (amended to Fed. R. Civ. P. 56(c)(4) in 2010)).

## DISCUSSION

The parties make the following arguments in their cross-motions for summary judgment: Travelers argues that both Hudson and Steadfast have a duty to defend Notias in the Underlying Action and that the coverage provided by Travelers is excess to the coverage provided by Hudson and Steadfast. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 40. Hudson argues that it has no duty to defend Notias because there is no reasonable possibility that the underlying injury was caused, in whole or in part, by Jind's work. *See* Hudson Mem. Supp. Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. ("Hudson Mem."), ECF No. 46. Steadfast argues that it has no duty to defend Notias because it did not receive timely notice of the tender demands; in the alternative, it argues that its policy is excess over Hudson's. *See* Steadfast Mem. Opp'n Pl.'s Mot. & Supp. Cross-Mot. Summ. J. ("SF Mem."), ECF No. 41-4. The Court addresses in turn whether each Defendant has a duty to defend.

## I.    Hudson's Duty to Defend

### A.    Relevant Legal Principles

Under New York law, an insurer's duty to defend is "exceedingly broad" and is "triggered by the allegations contained in the underlying complaint." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007).[5]  "An insured's right to representation and the insurer's correlative duty to defend suits, however groundless, false or fraudulent, are in a sense 'litigation insurance' expressly provided by the insurance contract." *Id.* at 1132.  Accordingly, "so long as the claims asserted against the insured may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay,* there is no doubt that it is obligated to defend." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)).  "The duty [to defend] remains even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered." *Automobile Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006).  However, "a narrow, but widely recognized exception" to the four corners rule "allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and unrelated to the merits of plaintiff's action, plainly take the case outside the policy coverage." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004).  Put differently, "an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Allstate Ins. Co. v. Zuk*, 574 N.E.2d 1035, 1037 (N.Y. 1991).

---

[5] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

### B.    Application

Hudson's sole defense to the claim that it owes Notias a duty to defend is that Hudson's insured, Jind, could not possibly be liable for the underlying injury.  *See* Hudson Mem. at 2. Specifically, Hudson argues that because Jind completed its work on the gate well before Rebollar's injury and was not responsible for installing the locking mechanism on the gate that allegedly injured her, there is no reasonable possibility that Hudson will be called upon to defend or indemnify Notias as an additional insured.  *See id.*  But the duty to defend is triggered by the allegations set forth in the pleadings, "however groundless, false or fraudulent."  *BP Air Conditioning*, 871 N.E.2d at 1132.  Here, Rebollar's allegations that Jind and others were negligent in maintaining the equipment, locks, and entry system at the Premises, *see* Szczepanski Decl. Ex. 17 at ¶ 89, ECF No. 38-15, plausibly fall within the scope of Hudson's policy coverage, thus triggering the duty to defend.  *See Hugo Boss*, 252 F.3d at 620.  That is so even though Jind may ultimately prevail in arguing it was not responsible for the locks.  *See id.*

Hudson contends that "testimonial and documentary evidence adduced in the Rebollar Action" proves that it was not responsible for the mechanism that caused the underlying injury. Hudson Mem. at 2.  But evidence adduced *in the underlying action itself* is not the kind of extrinsic evidence "unrelated to the merits of plaintiff's action" that can be said to "plainly take the case outside the policy coverage."  *Int'l Bus. Machs.*, 363 F.3d at 148.  Travelers is correct that Hudson cannot avoid its duty to defend by relying on such evidence.  *See* Pl.'s Reply Supp. Mot. Summ. J. & Opp'n Hudson's Cross-Mot. Summ. J. ("Pl.'s Hudson Reply") at 1, ECF No. 58.[6]  But even

---

[6] Hudson relies heavily on *LM Insurance Corp. v. Federal Insurance Co.*, which stated that "a court may probe the allegations contained in a third-party complaint or crossclaim to examine whether the contentions plausibly give rise to a duty to defend." 585 F. Supp. 3d 493, 500 (S.D.N.Y. 2022).  That case is not binding on this Court, and in any event involved the sufficiency of third-party allegations against a claimant's employer to trigger a duty to defend. *See*

if the Court were to consider Hudson's evidence, it does not establish "as a matter of law that there is no possible factual or legal basis" on which Hudson might eventually be obligated to indemnify Notias.  *Allstate*, 574 N.E.2d at 1037.  To the contrary, Travelers has established beyond any genuine dispute of material fact that the underlying allegations plausibly fall within the Hudson Policy's coverage and that Hudson owes a duty to defend Notias in the Underlying Action.

Moreover, the Hudson Policy is primary to the Travelers Policy.  The Hudson Priority Endorsement provides that the Hudson Policy will be primary when Jind agrees in a written contract to provide primary and non-contributory coverage.  Szczepanski Decl. Ex. 2 at HUD 0063.  And the Jind Subcontract expressly requires that Jind's insurance coverage for Notias and other additional insureds "shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the Additional Insureds."  Szczepanski Decl. Ex. 4 at HUD 0792.  Aside from rehashing its argument that it owes no duty to defend in the first place, Hudson does not dispute that its policy, should it apply, would be primary to the Travelers Policy.

## II.    Steadfast's Duty to Defend

### A.    Relevant Legal Principles

New York courts have held that "[w]here a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded [to] the carrier

---

*id.* Similarly, in *Ohio Security Insurance Co. v. Travelers Indemnity Co. of Connecticut*, the underlying "complaint d[id] not allege any acts or omissions by" the employer of the injured party, who was impleaded by a first-party defendant in the suit.  No. 19 Civ. 1355, 2021 WL 797670, at *1, *6 (S.D.N.Y. Mar. 1, 2021).  Here, because Jind has been added as a direct defendant in the Underlying Action, the sufficiency of third-party allegations is not at issue.  Rebollar brought claims of negligence directly against Jind, and Hudson "may not avoid its duty to defend by pointing to evidence outside the complaint that belies [those] claims."  *Id.* at *4.

within a reasonable period of time." *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 833 N.E.2d 1196, 1197 (N.Y. 2005) (mem.). "The duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement." *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 743 N.Y.S.2d 59, 62 (App. Div. 2002). While "a justifiable lack of knowledge of insurance coverage may excuse a delay in reporting an occurrence," "in order to prevail on this theory, the insured must prove not only that it was ignorant of the available coverage, but also that it made reasonably diligent efforts to ascertain whether coverage existed." *Rockland Exposition, Inc. v. Marshall & Sterling Enters., Inc.*, 31 N.Y.S.3d 139, 143 (App. Div. 2016)*.*

However, failure to provide notice within a reasonable amount of time will not invalidate a claim absent prejudice to the insurer. Historically, New York courts had held that "where a contract of primary insurance requires notice 'as soon as practicable' after an occurrence, the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract." *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 827 N.E.2d 762, 764 (N.Y. 2005)). Under the common-law rule, "[n]o showing of prejudice [was] required." *Id.* In 2008, however, "the New York Legislature amended its Insurance Law to change the state's common-law no-prejudice rule with respect to liability insurance policies issued or delivered in New York." *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013) (citing 2008 N.Y. Sess. Laws 388 (McKinney)), *aff'd*, 586 F. App'x 726 (2d Cir. 2014). New York Insurance Law now requires insurance policies issued or delivered in New York on or after January 17, 2009 to include a provision stating "that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer." N.Y. Ins. Law § 3420(a)(5). The law further provides:

[T]he burden of proof shall be on: (i) the insurer to prove that it has been prejudiced, if the notice was provided within two years of the time required under the policy; or (ii) the insured, injured person or other claimant to prove that the insurer has not been prejudiced, if the notice was provided more than two years after the time required under the policy.

*Id.* § 3420(c)(2)(A).

## B.    Application

Here, the Steadfast Policy requires an additional insured, such as Notias, to "see to it that [Steadfast is] notified as soon as practicable of an 'occurrence' or offense that may result in a claim." Szczepanski Decl. Ex. 3 at STEADFAST000475. As required by New York Insurance Law § 3420(a)(5), that requirement is tempered by the caveat that "[f]ailure to give notice to [Steadfast] [as] required . . . shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced [Steadfast]." Szczepanski Decl. Ex. 3 at STEADFAST000457. The parties agree that Notias was first brought into the Underlying Action on November 18, 2021,[7] when the third-party complaint was brought against Notias and Jind, Pl.'s SOF ¶ 29; that Travelers made its first tender to Kiska, Steadfast's insured, nearly two years later on November 14, 2023, *id.* ¶ 50; and that Travelers made its first tender to Steadfast itself on February 6, 2024, *id.* ¶ 51. But Travelers and Steadfast disagree about (1) whether the notice given by Travelers was reasonable under the circumstances and (2) who bears the burden to demonstrate prejudice to Steadfast.

---

[7] Although Travelers contends that Notias had not yet been served with the third-party complaint in November 2021, it fails to state when Notias *was* served. Pl.'s Reply Supp. Mot. Summ. J. & Opp'n Steadfast's Cross-Mot. Summ. J. ("Pl.'s Steadfast Reply") at 4 n.1, ECF No. 57. A glance at the docket in the Underlying Action indicates that Notias was served on December 2, 2021, a difference of less than two weeks that is not legally significant here. *See* Aff. of Serv., Dkt. No. 30, *Rebollar v. Hope E. of Fifth Hous. Dev. Fund Co., et al.*, No. 151176/2021 (N.Y. Sup. Ct. Dec. 8, 2021).

On the issue of whether notice was reasonable, Travelers contends that its delay was justified because "[t]he Steadfast Policy's existence was not disclosed to Notias until November 17, 2023." Pl.'s Reply Supp. Mot. Summ. J. & Opp'n Steadfast's Cross-Mot. Summ. J. ("Pl.'s Steadfast Reply") at 3, ECF No. 57. But, as Steadfast points out, Notias's original subcontract with Kiska required Kiska to purchase and maintain insurance coverage listing Notias as an additional insured. Szczepanski Decl. Ex. 8 at STEADFAST000365-66. As of November, 18, 2021, then, Notias knew of the likely existence of Kiska's insurance policy and "could glean a reasonable possibility of the policy's involvement." *Paramount Ins. Co.*, 743 N.Y.S.2d at 62. Travelers cannot reasonably argue that Notias "was ignorant of the available coverage," nor does it make any effort to show that Notias "made reasonably diligent efforts to ascertain whether coverage existed," *Rockland Exposition*, 31 N.Y.S.3d at 143. Although Travelers complains that it did not receive the Steadfast Policy until November 17, 2023—three days after Travelers' tender to Kiska—it does not explain why it and Notias waited two years to even *ask* Kiska for the policy. Notias's delay of more than two years is inexplicable and unreasonable under the circumstances.[8]

On the issue of prejudice, New York law places the burden on the insured to prove the absence of prejudice "if the notice was provided more than two years after the time required under the policy." N.Y. Ins. Law §3420(c)(2)(A)(ii). Here, the time required under the Steadfast Policy was "as soon as practicable." Szczepanski Decl. Ex. 4 at STEADFAST000475. Therefore,

---

[8] Travelers further argues that it "did in fact tender Notias' defense and indemnification directly to Kiska and its defense counsel on November 14, 2023, within two years of Notias first being named as a party to the Underlying Action." Pl.'s Steadfast Reply at 4. But the Steadfast Policy requires notice be given "as soon as practicable" to the *insurer*, not the insured, and Travelers has not explained why it did not attempt to obtain the identity of Kiska's insurer in the first two years of Notias's involvement in the Underlying Action.

because Travelers waited more than two years to notify Steadfast and provides no explanation for its failure to investigate whether coverage existed when it first learned of the Underlying Action, Travelers bears the burden of showing that Steadfast was not prejudiced.

Travelers has made almost no effort to satisfy that burden, stating only that "Steadfast, Kiska, and Kiska's defense counsel have had every opportunity to participate in every phase of litigation in the Underlying Action." Pl.'s Steadfast Reply at 5. This is insufficient to create a genuine dispute of material fact as to whether the two-year delay prejudiced Steadfast's ability to investigate or defend the claim. *See* N.Y. Ins. Law § 3420(c)(2)(A)(ii), (c)(2)(C). Accordingly, Steadfast owes no duty to defend Notias in the Underlying Action.[9]

## CONCLUSION

For the reasons stated above, Travelers' motion for summary judgment, ECF No. 36, is **GRANTED IN PART** and **DENIED IN PART**; Hudson's cross-motion for summary judgment, ECF No. 42, is **DENIED**; and Steadfast's cross-motion for summary judgment, ECF No. 41, is **GRANTED**.

The Court hereby declares that: (1) Hudson has a duty to defend Notias in connection with the Underlying Action; Hudson's coverage obligations to Notias in connection with the Underlying Action are primary; Travelers' coverage obligations are excess to those of Hudson with respect to the Underlying Action; and (2) Steadfast has no duty to defend Notias in connection with the Underlying Action.

Because the Court lacks sufficient information at this stage to enter a money judgment against Hudson, it reserves judgment on the question of damages. Travelers and Hudson are

---

[9] Because the Court holds that Steadfast owes no duty to defend, it does not address the question of priority of coverage between Steadfast and Hudson.

directed to meet and confer as to the amount of any money judgment. By **October 17, 2025**, Travelers and Hudson shall submit a joint letter indicating whether they have been able to resolve this issue. If not, the letter shall propose a process for resolving the amount of damages and shall also state whether the parties seek a referral for mediation, either through the District's mediation program or to the assigned Magistrate Judge for a settlement conference. If the parties propose additional summary judgment briefing, the status letter shall include a proposed briefing schedule.

The Clerk of Court is respectfully requested to terminate ECF Nos. 36, 41, and 42.

SO ORDERED.

Dated: September 26, 2025

New York, New York

DALE E. HO
United States District Judge