```
                                            USDC SDNY
                                            DOCUMENT
                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                DOC #: _____
SOUTHERN DISTRICT OF NEW YORK               DATE FILED: __11/18/25__
```

THE TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT,

        Plaintiff,           24-CV-1523 (DEH) (BCM)

  -against-                          **ORDER**

HUDSON EXCESS INSURANCE COMPANY, et al.,

        Defendants.

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court are: (1) the motion of plaintiff The Travelers Indemnity Company of Connecticut (Travelers) for a protective order (Pl. Mot.) (Dkt. 65), and (2) the cross-motion of defendant Hudson Excess Insurance Company (Hudson) to compel discovery (Def. Cross-Mot.) Dkt. 68). The motions are within the scope of my reference. (Dkt. 8.) For the reasons set forth below, Travelers' motion is GRANTED IN PART and Hudson's motion is DENIED.

## Background

This is an insurance coverage dispute in which Travelers sought, *inter alia*, a declaration that defendant Hudson and defendant Steadfast Insurance Company (Steadfast) have a duty to defend Notias Construction, Inc. (Notias) in connection with an underlying personal injury action entitled, *Rebollar v. Hope East of Fifth Housing Development Fund Company, et al.*, pending in the Supreme Court of the State of New York, County of New York, Index No. 151176/2021 (the Underlying Action), and money damages to reimburse Travelers for the costs incurred in providing a defense to Notias thus far. In its summary judgment papers, filed on December 13, 2024, Travelers estimated that those costs amounted to $48,866.11 as of that date. (Dkt. 39 ¶ 56.)

On September 26, 2025, the Hon. Dale E. Ho, United States District Judge, granted Travelers' summary judgment motion in part and declared that:

> (1) Hudson has a duty to defend Notias in connection with the Underlying Action; Hudson's coverage obligations to Notias in connection with the Underlying Action are primary; Travelers' coverage obligations are excess to those of Hudson with respect to the Underlying Action; and (2) Steadfast has no duty to defend Notias in connection with the Underlying Action.

Op. & Order (Dkt. 62) at 20. However, because the Court lacked "sufficient information at this stage to enter a money judgment," it reserved judgment on the question of damages. *Id*. Acting on the assumption that both Travelers and Hudson desired to resolve the damages issue efficiently, Judge Ho directed them to "meet and confer as to the amount of any money judgment" and submit a joint letter by October 17, 2025. *Id*. at 21. In the joint letter, the parties were to "indicat[e] whether they have been able to resolve this issue," and, if not, "propose a process for resolving the amount of damages." *Id*. Judge Ho suggested, as possible processes for resolving that question, a referral to mediation, a referral to the assigned Magistrate Judge for a settlement conference, or "additional summary judgment briefing." *Id*.

On October 8, 2025, counsel for Travelers, Lisa Szczepanski, telephoned counsel for Hudson, Steven I. Lewbel, in an effort to initiate the meet-and-confer process directed by Judge Ho, and left a voicemail message. *See* Szczepanski Decl. (Dkt. 66) ¶ 3. In her message, Szczepanski advised that "Travelers had compiled all defense billing and invoices paid to date on behalf of its named insured and was prepared to exchange them." *Id*. She "also requested a call back from Hudson's counsel to discuss whether counsel could agree to keep the billing and invoices confidential for purposes of the Court-ordered meet and confer or if Hudson preferred to negotiate a protective order so that the billing and invoices could be formally produced." *Id*.

Hudson's counsel never returned the call (or Szczepanski's follow-up email, *see* Szczepanski Decl. Ex. 1). Instead, on October 10, 2025, Lewbel sent Szczepanski a letter stating that "[a]t this point" Hudson "selects additional summary judgment briefing as respects the defense cost issue and declines the other options proposed by the District Court." *Id*. Ex. 2, at 2. Lewbel

then asked Travelers to produce the "legal bills/invoices and expense documents for which [it] seeks reimbursement" (the Defense Billing), as well as certain "additional materials," including Travelers' Panel Counsel Rate and Retention Agreement with the law firm representing Notias in the Underlying Action; its Retention and Billing Policy for Outside Counsel applicable to the Underlying Action; proof of the payments it made to defend Notias in the Underlying Action; and "[a]udit recaps" with respect to the invoices for which Travelers seeks reimbursement (collectively the Additional Materials). *Id*. at 2.[1] Lastly, Lewbel opposed the entry of any protective order, asserting (without citation) that "courts have ruled that the documents at issue will file with the court under seal." *Id*. Apparently assuming that any protective order would prohibit Hudson's in-house personnel from reviewing the Defense Billing and the Additional Materials, Lewbel argued that this would be impractical, as Hudson "will necessarily need to review defense counsel's future bills for payment" once it takes over the defense of Notias in the Underlying Action. *Id*.

Szczepanski replied that same day, explaining that filing the Defense Billing under seal would not address Hudson's conflict arising from the fact that it is already defending two parties in the Underlying Action, Jind Contractors Inc. and Jind Construction Inc. (the Jind Parties), whose interests are adverse to Notias. *See* Szczepanski Decl. Ex. 3, at 1-2 (explaining that Notias and the Jind Parties have cross-claimed against one another in the Underlying Action). "[T]herefore," Szczepanski wrote, "Hudson's defense of Notias must be handled separately from Hudson's defense of [the Jind Parties]." *Id*. at 2. Szczepanski attached a proposed stipulated protective order,

---

[1] Lewbel's letter requested the Additional Materials only if Travelers used outside counsel (as opposed to "staff counsel Law Office of Eric Feldman") to defend Notias in the Underlying Action. Szczepanski Decl. Ex. 2, at 2. It is not clear from the records before this Court whether Travelers did or did not use any counsel other than its staff counsel to defend Notias. The publicly-available records of the Underlying Action on the New York Unified Court System website list only the Law Office of Eric D. Feldman as counsel for Notias.

in a form commonly used in this District, under which either party could designate documents as "confidential" at the time of production, if counsel for the producing party believed in good faith that they contained "information that is proprietary, a trade secret, or otherwise sensitive non-public information." Prop. Prot. Order (Szczepanski Decl. Ex. 3, at ECF pp. 3-6) ¶ 1. Documents so designated would be "held and used by the person receiving [them] solely for use in connection with this action." *Id*. ¶ 2. The proposed order would generally permit disclosure of "confidential" documents to "the receiving party and counsel, including in-house counsel," except that Hudson would *not* be permitted to disclose Travelers "confidential" documents to "employees and representatives of Hudson Excess Insurance Company assigned to the defense of any party adverse to Notias . . . in the underlying action." *Id*. ¶ 4(a). The proposed order also contains standard provisions governing challenges to confidentiality designations, requiring the parties to "follow the Court's procedures with respect to filing under seal," and mandating the return or destruction of "confidential" materials at the end of the case. *Id*. ¶¶ 3, 9, 10.[2]

On October 17, 2025, the parties submitted a "joint" letter to Judge Ho in which the only thing they agreed on was that they had "not been able to resolve the amount of reimbursement owed to Travelers." Joint Ltr. (Dkt. 63) at 1. Travelers repeated that it was ready to turn over the Defense Billing to Hudson, but first sought a protective order, because the Defense Billing

---

[2] In our Circuit, leave of court is required before "judicial documents" can be filed under seal. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Moreover, "it is well-settled that 'the mere existence of a confidentiality order' does not justify a sealing order." *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2022 WL 715241, at *1 (S.D.N.Y. Mar. 10, 2022) (quoting *Lugosch*, 435 F.2d at 126); *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2021 WL 1541385, at *2 (S.D.N.Y. Apr. 20, 2021) ("To the extent a party's justification for sealing is based on a confidentiality order, the party has not met its burden."); *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 221 (S.D.N.Y. 2019) (mere fact that document was marked "confidential" during discovery does not establish that sealing is required). Thus, the parties cannot simply agree among themselves to file certain categories of documents under seal. Nor can they assume that the court will agree to seal the documents for which they seek such protection.

"contains confidential attorney-client privileged information, attorney work product, and non-public billing rates." *Id*. at 2. Travelers complained that Hudson refused even to "negotiate" a protective order, much less to meet and confer, as required, concerning the amount of reimbursement owed. *Id*. Travelers asked for leave to move for the entry of its proposed protective order and suggested a briefing schedule. *Id*. Travelers did not address whether it retained outside counsel to defend Notias or, if so, whether it was willing to produce the Additional Materials (with or without a protective order).

Hudson, for its part, denied that it had "unilaterally" chosen "additional summary judgment briefing" as its preferred method of resolving the reimbursement issue, claiming that it merely sought the Defense Billing – and the Additional Materials – "before a definitive decision is made on how to proceed." Joint Ltr. at 3. Hudson complained that Travelers "refused to respond as to whether Travelers would provide all, some or none" of the Additional Materials, and requested leave to "cross-move to compel production" of the Additional Materials "prior to moving to the actual legal fee recovery phase." *Id*. at 4. As to the confidentiality order, Hudson repeated its position that, because "courts in this District have ruled that as the documents in issue will file with the court under seal, a protective order is unnecessary," and that such an order would be "impractical in this circumstance because Hudson Excess is required to take over and thus review, process and pay counsel that represents Notias. Therefore, Hudson Excess will necessarily need to examine defense counsel's future bills for payment and defense counsel's past bills for a reimbursement position." *Id*. Hudson did not address the conflict issue raised by Travelers.

On October 21, 2025, Judge Ho granted leave for the parties to file the motions now before the Court. (Dkt. 64.) Travelers filed its motion on October 31, 2025, asking the Court to enter its proposed protective order. Hudson filed its cross-motion (which also functions as its opposition to

5

Traveler's motion) on November 14, 2025, asking the Court to compel Travelers to produce the Additional Materials, including: its Panel Counsel Rate and Retention Agreement with the law firm representing Notias in the Underlying Action; its applicable Retention and Billing Policy for Outside Counsel; proof of the payments made by Travelers to defend Notias in the Underlying Action; and "[a]udit recaps" with respect to the law firm invoices for which Travelers seeks reimbursement. *See* Def. Cross-Mot. at 1-2. The motion does *not* ask the Court to compel production of the Defense Billing itself.

### The Parties' Positions

In their motion papers, the parties reprise the same arguments sketched in their letters. Travelers cites several cases supporting its contention that detailed attorney billing records contain material protected by the attorney-client privilege and the attorney work-product doctrine, and thus warrant confidential treatment when produced to an opposing party. *See* Pl. Mem. (Dkt. 67) at 3-4. Travelers also notes that merely filing the Defense Billing under seal (assuming the Court agreed to that plan) would not prevent its disclosure to the Hudson personnel handling the defense of the Jind Parties. "As such, filing under seal alone would be insufficient to protect the privileged nature of the Defense Billing and would not obviate the need for a protective order here." *Id*. at 5. Travelers again fails to address whether it retained outside counsel to defend Notias in the Underlying Action and, if so, whether it is willing to produce the Additional Materials (with or without a protective order).

Hudson, for its part, argues that Travelers should be compelled to produce the Additional Materials because they bear on the reasonableness of the defense fees and expenses for which Travelers seek reimbursement, and are therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(2). Def. Mem. (Dkt. 68-5) at 4-7. Hudson adds Travelers has failed to demonstrate that any portion of

6

the Defense Billing is privileged, and cites several cases which it describes as holding that "billing statements do not generally fall under the ambit of the attorney-client privilege." *Id*. at 9. Therefore, it concludes, Travelers is not entitled to the entry of a protective order. Hudson again fails to address the conflict issue raised by Travelers or discuss the contents of Traveler's proposed protective order.

Having carefully reviewed both parties' moving papers and Hudson's opposition to Travelers' motion, this Court does not require any further briefing to resolve the pending disputes.

### **Hudson's Motion is Denied**

Hudson's cross-motion to compel discovery is made pursuant to "Federal Rule of Civil Procedure 37." Def. Cross-Mot. at 1; Def. Mem. at 1. Rule 37(a)(3)(B) governs motions to compel the production of documents. Such a motion may be made if "a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – *as required under Rule 34*." Fed. R. Civ. P. 37(a)(3)(B)(iv) (emphasis added).

Hudson is not entitled to relief under Rule 37(a)(3)(B)(iv) because it does not and cannot claim that Travelers failed to produce documents "as required under Rule 34." Hudson cannot make that claim because it never served Travelers with a Rule 34 document request for the Additional Materials. Instead, Hudson informally requested both the Defense Billing and the Additional Materials in its October 10, 2025 letter (and then refused to even consider a negotiated protective order that would protect the sensitive documents it requested from indiscriminate public disclosure or disclosure to the Hudson personnel responsible for the defense of the Jind Parties in the Underlying Action). Relief under Rule 37 is not available to parties that fail to utilize the discovery devices provided in the Federal Rules of Civil Procedure. *See, e.g., Schwartz v. Mktg.*

7

*Pub. Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994) ("Since these documents were not requested pursuant to Fed. R Civ. P. 34, . . . Rule 37 does not by its terms apply.").[3]

Further, Hudson has failed to establish that the Additional Materials (the only documents that it seeks to compel) are "relevant to any party's claim or defense and proportional to the needs of the case," as required by Rule 26(b)(1). When Hudson first sought these documents, it expressly acknowledged that they would only be relevant to the remaining issues between the parties (specifically, to the reasonableness of the fees and expenses that Travelers incurred in the Underlying Action) if Hudson utilized outside counsel, rather than "assigned staff counsel," to defend Notias in that action. Szczepanski Decl. Ex. 2, at 2. Yet Hudson makes no showing that any outside counsel were involved in defending Notias in the Underlying Action. It has therefore failed to show that the Additional Materials are relevant to the remaining claims and defenses in this action, much less that they are proportional to the relatively modest "needs of the case," now that the main issues have been adjudicated.

### **Traveler's Motion is Granted in Part**

Travelers is correct that attorney billing records – in particular, detailed time records that reveal "more than client identity and fee information" – may be "subject to the attorney-client privilege," *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y. 2002), as well as

---

[3] *Accord Cortinas v. Vasquez*, 2022 WL 1023795, at *3 (E.D. Cal. Apr. 5, 2022) (Relief under Rule 37 was unavailable where "Plaintiff did not propound written requests for production of documents to Defendants."); *Alberts v. Wheeling Jesuit Univ.*, 2011 WL 13195969, at *2 (N.D.W. Va. Jan. 21, 2011) ("A court cannot grant a motion to compel unless a previous formal discovery request preceded the motion to compel."), *objections overruled,* 2011 WL 2110805 (N.D.W. Va. May 25, 2011); *Burgie v. Euro Brokers, Inc.*, 2008 WL 11426878, at *4 n.2 (E.D.N.Y. Jan. 18, 2008) ("Fed. R. Civ. P. 34 is the appropriate discovery device for seeking documents. Contrary to plaintiff's contention, neither the disclosure obligations mandated by Fed. R. Civ. P. 26(a), nor depositions, relieve a party from making appropriate and timely discovery demands, utilizing the methods of discovery prescribed by the Federal Rules of Civil Procedure.").

the attorney work-product doctrine. *See, e.g.*, *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 WL 2267751, at *4 (S.D.N.Y. Aug. 8, 2025) ("Detailed billing records are generally protected from disclosure."); *Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*, 2023 WL 7924626, at *2 (S.D.N.Y. Nov. 16, 2023) ("The Court has reviewed the billing records *in camera* and determined that they are privileged because they are detailed and would reveal information about trial strategy or legal work if disclosed."); *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2021 WL 4481853, at *3 (S.D.N.Y. Sept. 29, 2021) (agreeing, after reviewing billing records *in camera*, that "the redacted narrative entries in the charts are privileged because they are detailed and contain information about discovery, trial strategy, factual investigation, and the legal services rendered"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971, at *2 (S.D.N.Y. Oct. 11, 1995) ("'[C]orrespondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of a service provided' . . . fall within the attorney-client privilege[.]") (citation omitted).

Conversely, "attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered." *DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005); *accord Oakley v. MSG Networks, Inc.*, 2025 WL 307413, at *2 (S.D.N.Y. Jan. 27, 2025) (Sullivan, J.); *Weiss v. Yotta Techs., Inc.*, 2024 WL 4285849, at *2 n.1 (S.D.N.Y. Sept. 25, 2024) ("While the qualitative descriptions of attorney work and conversations contained in [the billing records of Yotta's counsel] are privileged, . . . the 'billing rates' and 'billed amounts' are not.") (quoting *Altana Credit Opportunities Fund SPC*, 2023 WL 7924626, at *2).

Travelers' motion papers do not provide enough information about the documents comprising its Defense Billing to enable the Court to determine whether and to what extent those

9

documents are privileged, and therefore should be protected – both from public disclosure and from disclosure to the Hudson personnel responsible for the defense of the Jind Parties in the Underlying Action. Travelers argues, in its brief, that the records at issue contain "detailed information regarding legal strategy, case assessment, counsel's work product, and communications," "descriptions of legal research, consultations, and other work product materials, as well as descriptions of legal services that inherently reveal confidential communications between defense counsel and Notias." Pl. Mem. at 3. If so, portions of those documents may well be privileged. However, it is highly unlikely that they are privileged in their entirety. Moreover, this Court cannot make any privilege determinations as to billing records it has not seen.

This is precisely the situation in which a protective order in the general form proposed by Travelers is valuable. Such an order permits the producing party to make the initial determination, on a document-by-document basis, as to whether its records require protection from public disclosure (or from disclosure to conflicted insurance carrier personnel), without holding up the production process or requiring the Court to review voluminous documents *in camera*. *See, e.g.*, *Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc.*, 2016 WL 1364942, at *4 (S.D.N.Y. Mar. 28, 2016) (noting that such an order is appropriate where "the materials to be produced include a mix of protectable and non-protectable documents"). A well-crafted order may also permit the documents to be disclosed to some but not all of the receiving party's in-house personnel, thereby protecting against conflicts of interest without impeding that party's ability to review the documents for the purpose of resolving (or litigating) the immediate fee dispute.

Fed. R. Civ. P. 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) ("'The

grant and nature of a protective order is singularly within the discretion of the district court[.]'") (citing *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir. 1973)). In exercising that discretion, the court seeks to balance the interests of both the discovering party and the party from whom the discovery is sought, *Mitchell v. Fishbein,* 227 F.R.D. 239, 245 (S.D.N.Y. 2005), without losing sight of the purpose of the federal rules, which is to "secure the just, speedy, and inexpensive determination" of the case. Fed. R. Civ. P. 1.

In this case, the form of protective order submitted by Travelers, while generally appropriate for the current stage of the litigation, requires some refinement. For example, as written, it permits any party to designate a document "confidential" to protect "proprietary" information, a "trade secret," or "otherwise sensitive non-public information," Prop. Prot. Order ¶ 1, but does not expressly reference the attorney-client privilege or the work product doctrine as a basis for such a designation. Additionally, the proposed order contains no clear provision permitting the producing party to designate a specific portion of a document (for example, a detailed narrative entry revealing information about factual or legal investigation, strategy, or confidential attorney-client communications) as "confidential" (or privileged), without requiring that the entire document be restricted. I note as well that the proposed order, as written, appears to require receiving counsel to obtain the signature of "any person" to whom "confidential" information is disclosed – on a form promising to comply with the order – including "[e]mployees of such counsel assigned to and necessary to assist in the litigation" and persons who have "position[s] with the Court." *Id*. ¶¶ 4, 5. Counsel for Hudson may well identify other areas needing improvement once he focuses on the terms of the proposed protective order.

I therefore conclude that the best way to balance the parties' interests, while promoting the "just, speedy, and inexpensive determination" of the remaining issues in this case, is to GRANT Travelers' motion IN PART, as follows:

1. Travelers and Hudson, through their counsel of record, must meet promptly and confer in good faith and in real time (*e.g.*, in person or by telephone) to negotiate a stipulated protective order based on the form provided by Travelers to Hudson on October 10, 2025. Once they have reached agreement (or impasse), these parties must submit a joint letter to the undersigned Magistrate Judge which either (a) attaches their proposed stipulated protective order, to be so-ordered by the Court, or (b) reports that they are at impasse, *succinctly* describes the issues on which they disagree, and attaches their competing language.

2. So as not to delay damages-related discovery in the interim, Travelers must produce its Defense Billing to Hudson's counsel of record in this action no later than **November 25, 2025**, clearly identifying the portions as to which it intends to claim confidentiality (including, for purposes of this Order, privilege) by stamping or affixing an appropriate label to each page that Hudson believes, in good faith, contains confidential or privileged information. If only part of a page qualifies as confidential or privileged, Travelers must clearly identify that portion via highlighting or a similar method. Pending the Court's entry of a more detailed protective order, the Defense Billing, together with any other damages-related documents produced by Travelers: (a) may be used only for purposes of this action, and (b) may be disclosed only to the receiving party's counsel of record (including counsel's professional, paraprofessional and clerical staff assigned to work on this

matter) and, if necessary, the Court, accompanied by a sealing motion made in accordance with § 6 of the SDNY ECF Rules & Instructions.

3. Once Travelers has produced its Defense Billing, the parties must promptly meet and confer in good faith and in real time as to the amount of the damages to be awarded in this action. No later than **December 9, 2025**, the parties must submit a joint letter to the District Judge, confirming that they have met and conferred as required and indicating whether, having done so, they have been able to resolve the damages issue. If not, the letter must propose a process for resolving the amount of damages. If they cannot agree on appropriate process, the Court will determine how best to proceed.

## Conclusion

For the reasons and to the extent set forth above, Traveler's motion for a protective order (Dkt. 65) is GRANTED IN PART, and Hudson's motion to compel discovery (Dkt. 68) is DENIED.

Dated: New York, New York  
November 18, 2025

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**